UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

3601 CAMP STREET, LLC                           CIVIL ACTION

v.                                              NO. 15-290

ORLEANS PARISH SCHOOL BOARD, ET AL.             SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is the Orleans Parish School Board's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as its motion to strike an exhibit attached to the plaintiff's opposition memorandum.  For the reasons that follow, the Orleans Parish School Board's motion to dismiss is GRANTED and its motion to strike is DENIED as moot.

**Background**

This civil rights case concerns allegedly misappropriated playground equipment.

At this stage of the proceedings, the Court takes as true the allegations in the plaintiff's complaint.  On February 10, 2013 3601 Camp Street, LLC purchased from the Orleans Parish School Board all property, buildings, improvements, and component parts at 3601 Camp Street, New Orleans, Louisiana.  At the time the OPSB executed the act of sale, "Kaboom! Playground" equipment was permanently affixed to an asphalt playground on the 3601 Camp Street property.

1

Sometime after the sale, but before August 8, 2014, the Recovery School District informed Lawrence D. Crocker College Preparatory School that the playground equipment at 3601 Camp Street was available for use by Crocker. The OPSB, it is alleged, then gave the RSD permission to remove from 3601 Camp Street the playground equipment and to relocate it to Crocker. The playground equipment was in fact removed from 3601 Camp Street. On August 8, 2014, a member of 3601 Camp Street, LLC discovered that the playground equipment had been removed, which damaged the underlying asphalt.

No one notified 3601 Camp Street, LLC that the playground equipment was being removed from the property. Rather, 3601 Camp Street, LLC learned from a neighbor that some unidentified company had removed the equipment; the removing company told the neighbor that the playground equipment would be relocated to Crocker. An employee of Crocker confirmed that the playground equipment installed there was taken from 3601 Camp Street. On August 8, 2014, it is alleged, counsel for the OPSB contacted a member of 3601 Camp Street, LLC, and advised that he would need the weekend to review the act of sale to determine whether it excepted the playground equipment. 3601 Camp Street granted the OPSB's counsel's request. A few days later, 3601 Camp Street, LLC met with representatives of the OPSB and the RSD, at which time the parties discussed options to compensate the plaintiff for the

2

taking of the playground equipment.  No agreement was reached then or during other settlement discussions.[1]

After additional efforts to settle the dispute out of court, on January 30, 2015, 3601 Camp Street, LLC sued the Orleans Parish School Board, the Recovery School District, and Lawrence D. Crocker College Prep, alleging that the defendants acted under color of state law pursuant to 42 U.S.C. § 1983 in depriving the plaintiff of its property without any notice or a hearing in contravention of the Fourteenth Amendment to the U.S. Constitution.  The plaintiff seeks to recover compensatory and punitive damages, as well as attorney's fees.  On July 14, 2015 New Orleans College Preparatory Academies filed its Answer on behalf of Crocker; NOCPA avers that it is the charter organizer for Lawrence D. Crocker College Prep., which is a Recovery School District charter school.  On July 20, 2015 the plaintiff's claims against the RSD was dismissed without prejudice for failure to prosecute.  The OPSB now seeks to dismiss the claim asserted against it for failure to state a claim upon

---

[1]   The plaintiff apparently rejected an offer that included installation of comparable playground equipment from another school and asphalt repair.  (The plaintiff submits a December 5, 2014 letter from the OPSB's general counsel, confirming his "disappointment" that 3601 Camp Street, LLC has rejected the OPSB's offer.   Counsel for OPSB, ostensibly quoting from plaintiff's counsel's December 2, 2014 letter, suggests "we are experiencing difficulty trying to assess the monetary value of the damages you assert in your letter, e.g. 'agreement not to press charges, personal loss, mental anguish, and other costs related to the theft[.]'"  The defendant seeks to strike consideration of this letter as outside the scope of its motion to dismiss.).

which relief may be granted.  The OPSB also seeks to strike its December 5, 2014 letter that accompanies the plaintiff's opposition papers.  The Court ordered supplemental papers addressing whether the Parratt/Hudson doctrine is triggered by the plaintiff's allegations.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v.

4

Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).   But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.   Kaiser, 677 F.2d at 1050.   Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations."   Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted).   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## II.

The OPSB urges the Court to dismiss the plaintiff's only claim for failure to state a claim on the ground that the plaintiff has failed to plead facts that, if proved, would plausibly establish a

procedural due process violation.  The plaintiff counters that it has stated a plausible claim because it alleges that the OPSB caused the plaintiff to be deprived of its playground equipment and failed to hold a pre-deprivation hearing.  The alleged facts, and the defense papers in particular, ostensibly evoked, without explicitly invoking, the Parratt/Hudson doctrine, compelling the Court to order supplemental papers addressing whether the doctrine was indeed triggered.  In compliance with this Court's order, the parties have submitted supplemental papers addressing whether the Parratt/Hudson doctrine forecloses the plaintiff's § 1983 claim based on the OPSB's alleged violation of 3601's procedural due process rights.  The Court finds that it does.

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

(1)  deprivation of a right secured by the U.S. Constitution or federal law,

(2)  that occurred under color of state law, and

(3)  was caused by a state actor.

7

<u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).  Here, the plaintiff alleges that the OPSB -- by taking or authorizing the taking of its playground equipment without a hearing -- deprived the plaintiff to its Fourteenth Amendment right to procedural due process.

The Due Process Clause of the Fourteenth Amendment:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  Of course, "[d]ue process . . . is a flexible concept that varies with the particular situation."  <u>See Zinerman v. Burch</u>, 494 U.S. 113, 127 (1990).  "In procedural due process claims," the Supreme Court has observed, pertinent to the allegations of this case, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  <u>See Zinerman</u>, 494 U.S. at 126 (citing <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981)).

Quite rationally, the focus in a procedural due process case is what sort of process meaningfully suits the circumstances.  The <u>Parratt/Hudson</u> doctrine dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not violate procedural due process rights unless the State fails to provide an adequate *post*-deprivation remedy.  <u>See Woodard v. Andrus</u>, 419 F.3d 348, 351 (5th Cir. 2005)(citation omitted); <u>Alexander v. Ieyoub</u>, 62

F.3d 709, 712 (5th Cir. 1995)(citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 529 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535-45 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986))(emphasis added).[2] Reasoning that States cannot predict

---

[2] <u>Parratt</u> concerned a state prisoner's § 1983 claim that prison officials, who had negligently lost materials he had ordered by mail, had deprived him of his property without due process of law.  The Supreme Court found that, although the prisoner had been deprived of property within the meaning of the Fourteenth Amendment due process clause, the State's postdeprivation tort remedy (in which he could recover the value of the materials) provided the process that was due.  451 U.S. at 535-37.  Where the loss was caused by some random and unauthorized conduct, the Supreme Court noted that

> the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur.  It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation took place.

<u>Id.</u> at 541.  Thus, <u>Parratt</u> held that "the alleged loss, even though negligently caused, amounted to a deprivation." <u>Id.</u> at 536-37. <u>Hudson</u> extended <u>Parratt</u> to an intentional deprivation of property. In Hudson, a prisoner alleged that a guard deliberately destroyed his property during a search of his cell.  468 U.S. 517, 520-22. (1984).  As in <u>Parratt</u>, the prisoner could be compensated through a tort remedy.  <u>Id.</u> at 534-35  Thus, because "the state official was not acting pursuant to any established state procedure," the Court found that the State was not "in a position to provide for predeprivation process.  <u>Id.</u> at 533 ("The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.").

In <u>Daniels</u>, the Supreme Court reconsidered whether a merely negligent act of an official causing an unintended loss of or injury to property implicated constitutional due process; the Court "overruled <u>Parratt</u> to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." 474 U.S. at 330-31 ("[n]ot only does the word 'deprive' in the Due Process Clause connote more than a negligent act, but we should not

and therefore cannot safeguard against random and unauthorized deprivations through pre-deprivation process, the Supreme Court held that adequate post-deprivation remedies, such as tort remedies, are constitutionally sufficient. See Zinermon v. Burch, 494 U.S. 113, 115 (1990)(explaining that "Parratt and Hudson represent a special case of the general Mathews v. Eldridge analysis, in which postdeprivation tort remedies are all the process that is due simply because they are the only remedies the state can be expected to provide."). In fashioning limits on the scope of this doctrine, the Supreme Court has observed that state officials are barred from characterizing their conduct as "random and unauthorized" if the State had "delegated to them the power and authority to effect the very deprivation complained of." Id. at 138. The Supreme Court adds this guidance:

> [T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

Id. at 126 (explaining that "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to

---

'open the federal courts to lawsuits where there has been no affirmative abuse of power."). Insofar as the plaintiff here alleges mere negligence, its § 1983 procedural due process claim falters under Daniels.

provide due process."). Focusing on what sort of allegations suffice to allege a procedural due process violation, Judge Wisdom wrote:

> Parratt held that, to allege a violation of procedural due process, it is not sufficient simply to assert a deprivation of a protected property interest by persons acting under color of state law. The plaintiff must also allege that the state procedures available for challenging the deprivation do not satisfy the requirements of due process. . . . Parratt recognized that postdeprivation remedies may provide procedural due process when predeprivation process is not practicable or feasible. . . .

Thibodeaux v. Bordelon, 740 F.2d 329, 334 (5th Cir. 1984).[3]

Applying these principles here, the Court turns to consider the plaintiff's allegations concerning (a) the nature of the

---

[3] Placing Parratt in context, Judge Wisdom explained:

> The "touchstone" of procedural due process is "protection of the individual against arbitrary action of government." . . . The goal of procedural due process analysis is to determine whether a state has provided adequate procedures to minimize efficiently the risk of arbitrary or erroneous deprivations of . . . property. . . . The analysis requires consideration of three distinct [Mathews v. Eldridge, 424 U.S. 319, 335 (1976) factors:] [1] the private interest that will be affected; [2] the risk of an erroneous deprivation of such interest . . . and the probable value, if any, of additional or substitute procedural safeguards; and [3] the [state] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 336 (internal citations omitted).

deprivation, (b) whatever procedural safeguards are built into the statutory or administrative procedure used to effect the deprivation, and, finally, (c) any remedies provided by statute or tort law.  Because the plaintiff alleges a random and unauthorized deprivation that was not driven pursuant to any statutory or administrative protocol, and for which the State could not be expected to provide predeprivation process, the <u>Parratt/Hudson</u> doctrine applies.  Furthermore, because the State provides a meaningful postdeprivation remedy in the form of a tort claim, the requirements of due process are satisfied.  The plaintiff's complaint must be dismissed as a matter of law.

Pursuant to an act of cash sale on February 10, 2013, the OPSB sold to 3601 Camp Street, LLC the property at 3601 Camp Street; that sale included the Kaboom! playground equipment affixed to the asphalt there.  More than a year later, without permission of or notification to 3601 Camp Street, LLC, the playground equipment was removed (and the asphalt consequently damaged) and relocated to Crocker.  The taking was effected by the OPSB, or in any event occurred as a result of the OPSB's authorization.  After the playground equipment was removed, counsel for the OPSB asked the plaintiff for some time for him to examine the act of sale to determine whether it excepted the playground equipment.  The parties later "discussed different options to compensate the plaintiff for the wrongful taking."  But no agreement was reached.

Viewing these skimpy allegations in the light most favorable to the plaintiff, some unidentified state actor, without authorization, converted the plaintiff's playground equipment for another state use.  This, the plaintiff alleges, violated its right to procedural due process.  But, doctrinally, the right to procedural due process is not offended unless the State fails to provide an adequate *post*-deprivation remedy.  The plaintiff ostensibly alleges that it was provided with (but declined the State's offer of) a post-deprivation remedy, but even if it had not so alleged, Louisiana affords the plaintiff a tort claim for conversion.

The plaintiff presses that the Parratt/Hudson doctrine is not applicable, insisting that a predeprivation hearing was required before its playground equipment was wrongfully taken.  But even the plaintiff alleges that the very nature of the deprivation was unpredictable, begging the Court to question how a predeprivation hearing would be possible under the circumstances of the alleged unauthorized taking.[4]  "The central question in determining the applicability of Parratt, is whether it is practicable for the state to provide a predeprivation hearing."  Thibodeaux, 740 F.2d at 336 (citing Hudson, 468 U.S. 571 (1984)("The controlling inquiry

---

[4] Although the plaintiff has been on notice that its only claim was in peril (by the defendants' motion to dismiss and by the Court's order requiring submission of supplemental papers), there has been no request to amend the complaint.  Nowhere does the plaintiff allege any custom, practice, or established procedure of the OPSB or the State to convert property to its own use after it has been sold to a private company.

is solely whether the State is in a position to provide predeprivation process.")).  The plaintiff fails to persuasively argue, let alone allege, how a predeprivation hearing would be feasible here.[5]  Based on the plaintiff's own allegations, the State could not have predicted that the defendant officials or school board employees would steal or authorize the taking of the playground equipment more than a year after the school board had sold the property.  Here, the plaintiff's allegations place the defendants' alleged intentional[6] conduct in the "random and unauthorized" category, of the same sort involved in <u>Parratt</u> and <u>Hudson</u>.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the OPSB's motion to dismiss for failure to state a claim is hereby GRANTED.  Because the plaintiff has failed to allege a plausible § 1983 claim for a violation of procedural due process -- the only claim alleged -- the plaintiff's complaint is hereby dismissed,

---

[5]  Indeed, it would be irrational to suggest that the State fashion a rule -- "Do not remove property from property previously sold to a private party" -- forbidding a school board official from authorizing the theft of playground equipment affixed to property the State had sold months earlier.  Similarly, it would be absurd to suggest that the State hold a hearing to determine whether a school board official should engage in such conduct.

[6]  As previously noted, insofar as the plaintiff's allegations can be read to suggest merely negligent conduct (<u>see</u>, <u>e.g.</u>, the complaint at paragraph 19, where the plaintiff alleges that the OPSB's general counsel needed time to determine whether or not the playground equipment was excepted from the sale), the plaintiff likewise may not recover as a matter of law.

without prejudice to its pursuit of any postdeprivation tort, or other, remedy.[7]   Finally, the OPSB's motion to strike is hereby DENIED as moot.

New Orleans, Louisiana, August 5, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] For the same reasons, the plaintiff's same claim against New Orleans College Preparatory Academies, incorrectly identified by the plaintiff as Crocker, is also dismissed.

15